# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

REINALDO LOZANO,                    )
                                    )
                    Plaintiff,      )
                                    )
-vs-                                )        Case No. CIV-15-1230-F
                                    )
GOLDEN RULE INSURANCE               )
COMPANY,                            )
                                    )
                    Defendant.      )

## ORDER

Before the court are plaintiff's Amended Motion for Partial Summary Judgment (doc. no. 59) and defendant's Cross-Motion for Summary Judgment (doc. no. 65). Also before the court is defendant's Sealed Objections to Plaintiff's Summary Judgment Evidence (doc. no. 85). Upon due consideration of the parties' submissions, the court makes its determination.

Background

Plaintiff, Reinaldo Lozano, originally commenced this civil action in the District Court of Canadian County, State of Oklahoma. Defendant, Golden Rule Insurance Company, removed the action to this court based upon diversity jurisdiction, 28 U.S.C. § 1332(a). In his petition, plaintiff alleges that defendant issued to him a health insurance policy, effective June 15, 2013. Plaintiff alleges that while the policy was in force, he fell from a roof and suffered injuries that required medical treatment. According to plaintiff, his injuries ultimately required surgery to his neck and the surgery occurred on September 26, 2013. Plaintiff alleges that he submitted all medical bills related to the surgery as well as all medical

bills for preoperative and postoperative appointments and rehabilitation services to defendant.  Plaintiff alleges that defendant paid some of the medical expenses, but that, in December of 2013, he received explanations of benefits from defendant stating that medical expenses occurring in September and October of 2013 were not covered because the expenses were incurred after plaintiff's coverage terminated. Plaintiff also alleges that he received explanations of benefits from defendant stating that services provided relating to his neck surgery as well as the postoperative and rehabilitation services were not covered.  In his petition, plaintiff seeks to recover damages from defendant under two theories of liability, breach of contract and breach of the duty of good faith and fair dealing.

In its amended answer to plaintiff's petition, defendant alleges as an affirmative defense that no benefits are payable under the certificate issued to plaintiff under a group policy because plaintiff's coverage terminated or voided on September 14, 2013, the 91st day after the certificate's issuance.  Defendant alleges that the application for insurance provided that if plaintiff continued "other coverage existing on the Golden Rule effective date for more than 90 days after that date, the Golden Rule coverage will be void."  Doc. no. 39, ¶ 34.  Defendant alleges that on the effective date of plaintiff's certificate, June 15, 2013, plaintiff also had health insurance coverage through Pan American Life Insurance Company ("Pan American").[1]  Defendant alleges that by letter dated October 30, 2013, it informed plaintiff that it would not have issued the certificate had it known  the other insurance plan would not be terminated.  Defendant gave plaintiff the option of continuing coverage under the certificate by providing documentation of termination of the Pan American coverage.  Defendant alleges that plaintiff never responded to the letter and defendant accordingly terminated the certificate as of September 14, 2013.

---

[1]  The record reflects the effective date of the Pan American policy was May 30, 2013.

As another affirmative defense, defendant alleges that no benefits are payable under the certificate issued to plaintiff because plaintiff's medical claims are excluded from coverage under the preexisting condition limitation.

In his motion, plaintiff seeks, pursuant to Rule 56(a), Fed. R. Civ. P., partial summary judgment with respect to defendant's affirmative defense that no benefits are payable to plaintiff because his coverage terminated or voided on September 14, 2013. Defendant has filed a cross-motion seeking summary judgment as to both of plaintiff's breach of contract and bad faith claims.

Standard of Review

Under Rule 56(a), Fed. R. Civ. P., a party may move for summary judgment, identifying each claim or defense on which summary judgment is sought. A moving party is entitled to summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Rule 56(a), Fed. R. Civ. P. The moving party has the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). All reasonable inferences to be drawn from the undisputed facts are to be determined in a light most favorable to the non-moving party. United States v. Agri Services, Inc., 81 F.3d 1002, 1005 (10th Cir. 1996). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials, demonstrating that there is a genuine issue for trial. Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).

Plaintiff's Motion

I.

Plaintiff seeks partial summary judgment with respect to one of defendant's affirmative defenses. Specifically, plaintiff challenges defendant's assertion that no benefits are payable to him because his Golden Rule coverage terminated or voided on September 14, 2013 (the "other coverage" affirmative defense). According to defendant, the Golden Rule coverage terminated because plaintiff had coverage under the Pan American policy on the 91st day after the effective date of Golden Rule's coverage. Plaintiff, however, asserts that defendant's policy, specifically the Coordination of Benefits provision, allowed him to have coverage under another group health plan. According to plaintiff, the Pan American policy is a group policy, not an individual policy. Plaintiff contends that the application language in question (stating, in substance, that the Golden Rule coverage will void if plaintiff has coverage under other insurance more than 90 days after the effective date of Golden Rule's policy) conflicts with the policy's Coordination of Benefits provision. Plaintiff maintains that under Oklahoma law, the Coordination of Benefits provision, a specific provision, should control over the other coverage provision, a general provision. In the alternative, plaintiff asserts that defendant's policy is ambiguous, in light of the conflicting provisions, and thus, the policy should be construed strictly against defendant. So construed, plaintiff contends that defendant could not have relied on the "other coverage" provision in the application for insurance to terminate his policy. Therefore, plaintiff argues that defendant improperly terminated his policy.

In response, defendant argues that the "other insurance" clause in the application for insurance contains no limitation that the clause only applies if the "other insurance" is an individual policy. According to defendant, the "other insurance" clause applies regardless of whether the other coverage is a group

insurance policy or an individual insurance policy.  Defendant contends that the "other insurance" clause applies to any insurance coverage existing on the effective date of the Golden Rule policy and it provides for cancellation after 90 days if the "other insurance" still exists.  The Coordination of Benefits clause, defendant maintains, acknowledges, without endorsing, the possible existence of other coverage.  Defendant, however, contends that two scenarios could arise in which "other insurance" may arise.  The first scenario is where the prior coverage, as in this case, is in effect before and during the 90 days after the effective date of the certificate.  The second is where the insured acquires other coverage after the effective date of the certificate.  According to defendant, under the first scenario, the Golden Rule policy terminates after 90 days and it is not a coordination of benefits issue.  Under the second scenario, defendant contends that the Coordination of Benefits clause applies and it coordinates its benefits with the other insurance so long as that insurance is an employer-sponsored group policy.  Defendant thus argues that the Coordination of Benefits clause and the "other insurance" clause do not conflict.  Consequently, defendant contends that it, rather than plaintiff, is entitled to summary judgment.

Defendant additionally argues that plaintiff's position that a specific provision should control over a general provision does not apply because the Coordination of Benefits and "other insurance" clauses, as previously discussed, do not conflict. Nonetheless, defendant argues that the "other insurance" clause, rather than the Coordination of Benefits clause, is the specific provision which should apply, as it expressly pertains to other insurance in force when the Golden Rule coverage begins.

Further, defendant asserts that the Pan American policy is not group insurance.  According to defendant, the policy was issued to an association, the Business Workers of America, and the association's coverage does not qualify under Oklahoma law as group coverage.  Moreover, defendant states that Pan American

specifically represented to its representative that its policy was a self-paid, individual plan.

In reply, plaintiff argues that defendant's policy authorizes plaintiff to possess other health insurance coverage as long as it falls within certain parameters, *i.e.* group insurance coverage. Although defendant argues that the Pan American policy is not group insurance coverage under Oklahoma law, plaintiff contends that defendant has not provided anything to support that argument. Plaintiff points out that the Pan American policy specifically indicates in its title and its text that the policy is a group policy. Further, plaintiff argues that defendant has not presented any compelling argument as to why it could not have coordinated benefits with the Pan American policy. Plaintiff asserts that defendant's corporate representative, when deposed, testified that defendant's policy would not void any policy with which it could coordinate benefits. Finally, plaintiff argues that the "other coverage" clause and the Coordination of Benefits clause are contradictory and that, under Oklahoma law, the court should construe the contract as providing plaintiff with coverage.

Plaintiff, in a supplemental reply, submits the deposition testimony of Wesley Keith Bridges, the Rule 30(b)(6) corporate representative for Pan American, to support his argument that the Pan American policy constitutes group insurance.

II.

Under Oklahoma law, an insurance policy is a specific type of contract – a contract of adhesion. Spears v. Shelter Mut. Ins. Co., 73 P.3d 865, 868 (Okla. 2003). It is a contract of adhesion because of the unequal bargaining position of the parties. *Id*. Consequently, in the event of ambiguity or conflict in the policy's provisions, the policy is to be construed by the court strictly against the insurer and in favor of the insured. *Id*. When the policy's language is ambiguous, the meaning of the language is not what the drafter intended it to mean, but what a reasonable person in

the position of the insured would have understood it to mean.  *Id*.  An insurance contract is ambiguous if it is susceptible to two interpretations from the standpoint of a reasonably prudent layperson.  *Id*. at 869.

The court, upon review, agrees with plaintiff that the insurance policy is ambiguous.   The "other coverage" provision in the application for insurance[2] purports to prohibit other insurance coverage, whether group or individual coverage, which was in existence on the effective date of the Golden Rule policy and not cancelled within 90 days.[3] The "Coordination of Benefits" provision, on the other hand, contemplates defendant coordinating benefits with other group insurance or group-type insurance coverage, regardless of whether or not it existed prior to the effective date of the Golden Rule coverage and continued for more 90 days.[4]  The

---

[2]  The application provides that it and any supplements or amendments "will be a part of any policy/certificate, if issued."  Ex. 2 to plaintiff's motion, p. 6.

[3]  The "other coverage" provision states:

> If I continue other coverage existing on the Golden Rule effective date for more than 90 days after that date, the Golden Rule coverage will be void.

Ex. 2 to plaintiff's motion, p. 6.

[4]  The "Coordination of Benefits" provision states in pertinent part:

> Some people have health care coverage through more than one *plan* at the same time.  COB allows these *plans* to work together so that the total amount of all benefits will never be more than 100 percent of the *allowable expenses* during any calendar year. . .
>
> This Coordination of Benefits ("COB") provision applies to this *plan* when a *covered person* has health care coverage under more than one *plan* . . .

policy is therefore susceptible to two fair interpretations: (1) not allowing "other coverage" which existed at the effective date of the Golden Rule policy; or (2) allowing "other coverage" as long as it is group insurance or group-type coverage. Because the court concludes that the insurance policy is ambiguous,[5] the court, applying well-established Oklahoma law, construes it against defendant and finds that plaintiff is entitled to have other coverage as long as it is group or group-type insurance.

The court rejects defendant's argument that the policy is not contradictory because the Coordination of Benefits provision only applies if the other coverage exists after the effective date of the Golden Rule policy. The Coordination of Benefits provision does not limit its application to other coverage obtained after the effective date of the Golden Rule coverage. The provision allows a coordination of benefits with any group insurance or group-type coverage no matter when the insurance or coverage came into existence.

As to whether the Pan American policy constitutes group insurance, the court, based upon the record before it, cannot rule as a matter of law that the Pan American policy constitutes group insurance. Although plaintiff has submitted testimony from Wesley Bridges, Pan American's Rule 30(b)(6) witness, to support his argument that the Pan American policy constitutes group insurance, this testimony was presented in a supplemental reply. The court, however, cannot rely on new evidentiary materials presented for the first time in a reply brief. Doebele v. Sprint/United

---

> As used in this provision . . . "*Plan*" includes . . . group insurance .
> . .or other forms of group or group-type coverage . . ."Plan" does not
> include . . . individual or family insurance.

Ex. 3 to plaintiff's motion, pp. 35-36

[5] The court in Golden Rule Ins. Co. v. R.S., 368 S.W.3d 327, 335-338 (Mo. Ct. App. 2012), similarly found an ambiguity in the Golden Rule policy. The court finds the reasoning of the Missouri appellate court persuasive.

Management Co., 342 F.3d 1117, 1139 n. 13 (10th Cir. 2003).  The record which the court may permissibly rely upon to adjudicate plaintiff's motion reveals a genuine issue of material fact as to whether the Pan American policy is group insurance. Consequently, the issue of whether the Pan American policy is group insurance is one left for trial.

Accordingly, the court finds that plaintiff's amended motion for partial summary judgment with respect to defendant's "other coverage" affirmative defense should be denied.

Defendant's Objections to Evidence

Defendant has filed a cross-motion seeking summary judgment on plaintiff's claims for breach of contract and bad faith.  In opposition to the motion, plaintiff has submitted three exhibits (exhibits 4, 6 and 7) to which defendant objects.  Defendant argues that the exhibits contain inadmissible evidence, which the court should disregard for purposes of summary judgment.  Plaintiff opposes defendant's filing.[6]

Exhibit 4

Exhibit 4 consists of three pages of screen shots produced by Select Marketing Insurance Group ("SMIG"), a non-party.  One page contains memo entries of SMIG personnel and two pages are action logs.  Defendant objects to the screen shots, arguing that they are unauthenticated and constitute hearsay within hearsay.

---

[6] Initially, plaintiff opposes defendant's filing because the filing constitutes an improper motion to strike and it is untimely.  However, Rule 56(c)(2), Fed. R. Civ. P., provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  The 2010 Advisory Committee Notes to Rule 56 explain that in light of this, "[t]here is no need to make a separate motion to strike."  The court thus construes defendant's filing as objections pursuant to Rule 56(c)(2).  Further, because Rule 56(c)(2) does not specify a deadline for filing a Rule 56(c)(2) objection, the court finds that defendant's objections, which were filed simultaneously with defendant's reply brief, are timely and may be considered by the court.

Plaintiff responds that it is not necessary to authenticate the documents. He asserts that for summary judgment purposes, he does not have to produce evidence in a form that would be admissible at trial, rather, the content or substance of the evidence must be admissible. Plaintiff asserts that the screen shots are admissible under the business records exception to the hearsay rule. In any event, plaintiff maintains that the declaration of the custodian of records for SMIG submitted by defendant with its motion authenticates the screen shots.

In reply, defendant argues that assuming, without conceding, the screen shots are SMIG's business records, they contain records of phone calls with non-SMIG personnel or records of other information told to SMIG by third parties. These entries, defendant contends, are also hearsay and cannot be made admissible by the business records exception.

To "'determine whether genuine issues of material fact make a jury trial necessary, a court necessarily may consider only the evidence that would be available to the jury.'" Alnahhas v. Robert Bosch Tool Corporation, et al., 706 Fed. Appx. 920, 923 (10th Cir. 2017) (quoting Brown v. Perez, 835 F.3d 1223, 1232 (10th Cir. 2016)). However, this does not mean that the summary judgment evidence must be submitted in a form that would be admissible at trial. Id. The content or substance of the evidence must be admissible. Id. "'The requirement is that the party submitting the evidence show that it will be possible to put the information, the substance or content of the evidence, into an admissible form.'" Id. at 924 (quoting Brown, 835 F.3d at 1232); see also, 2010 Advisory Committee Notes to Rule 56 ("The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated."). Here, the court notes that defendant has not argued that the screen shots cannot be presented in a form that would be admissible in evidence. See, Rule 56(c)(2) ("[A] party may object that the material cited to support or dispute a fact *cannot be presented in a form that would*

*be admissible in evidence*.") (emphasis added).  Rather, it posits that the evidence is not admissible as presented for summary judgment.  Nonetheless, the court concludes that plaintiff has sufficiently demonstrated that challenged evidence can be presented in a form that would be admissible in evidence.  Specifically, plaintiff has demonstrated that the screen shots fall within the business records exception.  As to defendant's arguments that the shots appear to contain records of phone calls with non-SMIG personnel or records of other information told to SMIG by third parties and also constitute hearsay, defendant has not sufficiently articulated its objection.  Defendant has not identified the entries in the memos or action logs, which it contends come from non-SMIG personnel.  In an absence of a specific objection, the court declines to conclude that the evidence is inadmissible hearsay.  The court therefore concludes that defendant's objection to exhibit 4 should be overruled.

Exhibit 6

Exhibit 6 is an expert report of Mort Welch.  Defendant objects to the report on the ground that it is unsworn.  In addition, defendant objects to the report, claiming it is not reliable or helpful to the jury.

Plaintiff again points out that he need not produce evidence in a form that would be admissible at trial.  Plaintiff contends that the content and substance of Mr. Welch's expert report will be admissible at trial.  If the court were to find that an affidavit or declaration of Mr. Welch is necessary for the court to consider it for purposes of summary judgment, plaintiff requests leave to submit an affidavit or declaration.

Defendant replies that Mr. Welch's unsworn report does not constitute valid summary judgment evidence.  However, even if the report had a sworn statement by Mr. Welch, defendant contends that the report is still inadmissible because it contains legal conclusions.

Upon review, the court finds that defendant's objection to exhibit 6 should be overruled. In opposing summary judgment under Rule 56, a party "may object that the material cited . . . cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). As discussed, evidence need not be submitted in a form that would be admissible at trial, only "the content or substance of the evidence must be admissible." Brown, 835 F.3d at 1232 (quotations omitted). It is only necessary for plaintiff to show "that it will be possible to put the information, the substance or content of the evidence, into an admissible form." Brown, 835 F.3d at 1232 (quotation omitted). Since the written report of Mr. Welch sets out opinions that will be offered, via his testimony, at trial, the court concludes that there is no bar to considering the opinions for summary judgment purposes.

As to defendant's objection that Mr. Welch's report is inadmissible because it is not reliable or helpful to the jury, the court finds the objection should also be overruled. The court recently denied defendant's Daubert motion challenging the expert testimony of Mr. Welch on the same ground. *See*, doc. no. 122. That said, the court assures defendant that it does not rely on Mr. Welch's report for guidance as to what the law is.

Exhibit 7

Exhibit 7 is plaintiff's interrogatory answers. Defendant objects to the exhibit on the ground that it constitutes hearsay. Defendant states that while plaintiff verified his interrogatory answers, he did so only to "the best of [his] knowledge and belief." Doc. no. 85, p. 8 (quoting doc. no. 74-7, p. 6). Defendant argues that this is insufficient to overcome hearsay objections.

Plaintiff, in response, argues once again that he need not produce evidence in a form admissible at trial. He asserts that his interrogatory answers can be converted into evidence that would be admissible at trial because he will be testifying at trial as to his damages.

In reply, defendant points out that plaintiff does not dispute that his interrogatory answers are inadmissible hearsay. Defendant asserts that the fact plaintiff could have presented competent evidence of damages is not sufficient.

As previously discussed, plaintiff need not produce evidence in a form that would be admissible at trial. "[T]he content or substance of the evidence must be admissible." Brown, 835 F.3d at 1232 (quotations omitted). Plaintiff has shown that evidence of damages will be admissible via his testimony. Regardless, upon review of plaintiff's specific answers to interrogatories, the court is satisfied that the information relating to his damages is clearly within his "knowledge" rather than based upon his "belief." Consequently, the court concludes that defendant's hearsay objection to exhibit 7 should be overruled.

Defendant's Motion

I.

Defendant contends that it is entitled to summary judgment on plaintiff's breach of contract claim because it properly terminated or voided plaintiff's certificate and the pre-existing condition exclusion of its policy bars such claim. As to the latter, defendant argues that all of plaintiff's insurance claims arise from a back condition, which existed prior to the effective date of the Golden Rule coverage. Defendant maintains that the record evidence shows that plaintiff began experiencing symptoms in April of 2013 and he sought medical treatment for those symptoms prior to obtaining coverage with defendant. The undisputed evidence, defendant argues, supports the applicability of the pre-existing condition exclusion and precludes plaintiff's breach of contract claim.

In addition, defendant contends that it is entitled to summary judgment on plaintiff's bad faith claim because plaintiff cannot establish any element of the claim. Defendant contends that none of plaintiff's claims are covered under the certificate

issued to him for the reasons stated, and thus, plaintiff's bad faith claim fails.  In any event, defendant contends that it had a reasonable basis to deny plaintiff's insurance claim.  Defendant asserts that it contacted Pan American, which confirmed that the Pan American policy was in force, and defendant offered plaintiff additional time to cancel the Pan American policy before cancelling its policy and plaintiff did not respond to the offer.  Further, defendant contends that in addition to the information obtained from Pan American, it relied upon plaintiff's own comments in the December 13, 2013 telephone call, which indicated that he had other individual coverage in force on the effective date of the certificate.  Defendant maintains that its reliance on the information obtained from Pan American and plaintiff is sufficient to defeat plaintiff's bad faith claim.

Plaintiff, in response, argues that defendant is not entitled to summary judgment on either of his claims.  With respect to the breach of contract claim, plaintiff maintains that for the reasons discussed in his summary judgment motion, defendant wrongfully cancelled his policy due to the existence of the Pan American policy.  In addition, plaintiff asserts that under "mend the hold" doctrine, defendant is estopped from raising its new pre-existing condition defense to defeat his breach of contract claim.  Plaintiff contends that it is undisputed defendant did not deny his insurance claims or retroactively cancel his policy because of the alleged pre-existing condition.  Even if defendant could raise its new defense, plaintiff argues that his medical claims are not for treatment related to a pre-existing condition as defined by the policy.  Plaintiff also argues in his response and in his supplemental response that even if the claims were for a pre-existing condition, they are not excluded because the policy does cover some pre-existing conditions and defendant's position is not based upon any evidence that plaintiff intended to deceive defendant with regard to his insurance application.

With respect to the bad faith claim, plaintiff argues that he has marshaled evidence sufficient to substantiate (or at least raise a fact issue with respect to) each essential element of the claim. Plaintiff contends that his medical claims were covered by the policy. He also asserts that defendant did not have any reasonable basis for denying his medical claims and for canceling his policy. Plaintiff maintains that defendant failed to investigate his claims adequately because it did not obtain a copy of the actual Pan American policy. Plaintiff posits that had defendant adequately investigated the matter more thoroughly, it would have known the Pan American policy was a group policy. Lastly, plaintiff argues that defendant cannot rely upon an after-the-fact defense of pre-existing condition to defeat his bad faith claim.

In reply, defendant contends that plaintiff's "mend the hold" argument fails because Oklahoma cases have allowed an insurer to change its position in a breach of contract case. Defendant also points out that it is not changing its position 180 degrees as prohibited by the doctrine. Defendant asserts that it is arguing that if plaintiff's coverage did not terminate because of the "other coverage" provision, he has no coverage for his claims by virtue of the pre-existing condition exclusion. In addition, defendant contends that its evidence clearly shows that plaintiff's treatment was for a pre-existing back condition rather than an injury from a fall from a roof. Defendant argues that plaintiff has no evidence to rebut its evidence. Further, defendant maintains that it need not show an intent to deceive by plaintiff in order for the pre-existing condition exclusion to apply. Finally, defendant posits that it is entitled to summary judgment on its bad faith claim because its investigation of plaintiff's medical claims was reasonable and even if the Pan American policy were group insurance, it would not have affected defendant's decision to terminate the policy under the "other coverage" provision.

Plaintiff, in a second supplemental response, submits additional evidence to support his arguments that defendant is not entitled to summary judgment on either of his claims. Plaintiff also argues that there was no meeting of minds between the parties to amend the policy to allow its termination if, 90 days after the effective date of the Golden Rule policy, plaintiff had still other group insurance policy. Further, he argues that even if there were a legitimate dispute as to coverage, all the evidence he proffers shows that defendant did not have a reasonable, good faith belief to support withholding payment of plaintiff's claim and that it failed to adequately investigate plaintiff's claim.

## II.

Upon review, the court concludes that summary judgment is not appropriate on plaintiff's breach of contract claim. For the reasons previously discussed with respect to plaintiff's partial summary judgment motion, the court concludes that defendant's policy is ambiguous and the "other coverage" provision does not defeat plaintiff's medical claims, so long as the Pan American coverage is a group insurance. The record before the court raises a genuine issue of material fact on the group insurance issue.

As to the pre-existing condition defense, the court, as discussed below, rejects plaintiff's position that defendant is estopped from raising the defense by the "mend the hold" doctrine. However, the court concludes that plaintiff has proffered sufficient evidence to raise a genuine issue of material fact as to whether his neck surgery and all medical claims related to the surgery were for a pre-existing condition as defined by the policy.

Plaintiff, invoking the "mend the hold" doctrine, seeks to avoid defendant's pre-existing condition defense. The "mend the hold" doctrine is a common-law doctrine that "limits the right of a party to a contract suit to change his litigation position." Harbor Ins. Co. v. Continental Bank Corp., 922 F.2d 357, 362 (7th Cir.

1990).  In support of its argument, plaintiff relies on the <u>Harbor</u> case as well as <u>Railway Co. v. McCarthy</u>, 96 U.S. 258 (1877).

In <u>Harbor</u>, the plaintiff insurance companies sought a declaration that they were not liable under a directors and officers' policy.  The insured bank and its directors had been sued for securities fraud.  The insurers, in the complaint, alleged that the behavior of the directors had been so egregious that federal and state law precluded defense or indemnification of the directors.  After the suit was filed, the bank settled the underlying securities fraud cases.   The bank then filed a counterclaim seeking reimbursement for the amount it paid to settle the underlying cases.  The insurers reversed their course and argued that the insured bank "had settled the cases prematurely; the directors had been guilty of no misconduct at all!" <u>Harbor</u>, 922 F.2d at 359-60 (exclamation in original).  The counterclaim was tried, resulting in a judgment for the insurers of non-liability.  The bank appealed.

The Seventh Circuit concluded that the district court erred by disallowing evidence from the bank of the insurers' prior position.  The court concluded that the bank should have been allowed to present evidence to the jury that the insurers improperly tried to "mend the hold."   <u>Harbor Ins.</u>, 922 F.2d at 365.  The court observed that "[a] party who hokes up a phony defense to the performance of his contractual duties and then when that defense fails (at some expense to the other party) tries on another defense for size can properly be said to be acting in bad faith." *Id*. at 363.  However, the court expressed concern that "mend the hold" embodies a conception of the litigation process antithetical to the Federal Rules of Civil Procedure, which "are designed *not* to freeze parties in the position they take in their initial pleadings." *Id*. at 364 (emphasis in original).  It therefore adopted the position, conceded by the insured bank that "if pretrial discovery or other sources of new information justify a change in a contract party's litigating position as a matter of

fair procedure under the federal rules, that change should not be deemed a forbidden attempt to 'mend the hold.'"  *Id.*

Unlike this case, the issue before the court in <u>Harbor</u> was not whether an affirmative defense should be barred.   In <u>Railway Co. v. McCarty</u>, *supra*., the Supreme Court did bar a contract defense.  However, <u>Railway Co.</u> is distinguishable in that the new contract defense was asserted after the close of the evidence.  In the case at bar, defendant moved for and was granted leave to assert the additional defenses many months before discovery ended.  Nothing indicates that defendant deliberately refrained from advancing the defense to harm plaintiff's case.  The record reflects that defendant discovered the information, which is the basis of its defense, during pretrial discovery in this case.

It is not clear whether Oklahoma would adopt the "mend the hold" doctrine as argued by plaintiff.  The Court followed the doctrine in <u>Commercial National Bank v. Latham</u>, 116 P. 197 (Okla. 1911).  In that case, the bank wrongfully refused to pay a draft drawn against a customer's bank funds.  The bank had raised as an affirmative defense that the customer's deposit was a special one, made subject to certain rules and regulations, including that 60 days' notice be given before withdrawing the funds and that the customer identify himself to the satisfaction of the bank, which the customer had failed to do.  The Oklahoma Supreme Court refused to consider an affirmative defense raised by the bank "for the reason that defendant, having in its letter to the drawer bank placed its reason for dishonoring the check on grounds other than a failure of [the customer] to comply with said rules."  *Id.* at 198-199.  The court said that its ruling was in keeping with the rule laid down in <u>Railroad Co.</u> that "[w]here a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot after litigation has begun, change his ground and put his conduct upon another and a different consideration.  He is not permitted thus to amend his hold."  *Id.* at 199.

Although the Oklahoma Supreme Court followed the doctrine in Commercial Nat. Bank, that case was decided in 1911.  The doctrine has not been applied by the Court other than to preclude a party from raising a theory on appeal that was not raised in the trial court.  *See*, Morrison v. Atkinson, 85 P. 472 (Okla. 1906).  That circumstance is not present in this case.  Recently, the Tenth Circuit assumed without deciding that the doctrine applied.  However, the Tenth Circuit decision is unpublished and the court found the doctrine inapplicable under the facts of that case.  *See*, Fry v. American Home Assurance Co., 636 Fed. Appx. 764, 766 (10th Cir. 2016).

Plaintiff has relied upon Harbor to support his argument.  The court is inclined to agree with the Seventh Circuit that "if pretrial discovery or other sources of new information justify a change in a contract party's litigating position as a matter of fair procedure under the federal rules, that change should not be deemed a forbidden attempt to 'mend the hold.'"  Harbor Ins., 922 F.2d at 364.  In the case at bar, the facts show that defendant acquired the information to support its defense during pretrial discovery.  Such circumstances are distinguishable from those circumstances present in the Commercial Nat. Bank case.  Further, plaintiff has had ample time to obtain discovery to rebut the defense.  Therefore, the court concludes that defendant's pre-existing condition defense is not precluded by the "mend the hold" doctrine.

Even though the pre-existing condition defense is not precluded, the court, as previously stated, concludes that plaintiff's has proffered evidence sufficient to raise a genuine issue of material fact as to whether his neck surgery and medical claims relating to the neck surgery fall within the pre-existing condition exclusion.  In light of this finding, the court need not consider plaintiff's additional argument that the claims are not excludable under the policy because there is no evidence of an intent

to deceive by plaintiff in making the statements he made in the application for insurance.

III.

Additionally, the court finds that summary judgment is not appropriate on plaintiff's bad faith claim. It appears that the core of plaintiff's claim is his assertion that defendant failed to adequately investigate his claim. Plaintiff proffers evidence that defendant did not obtain a copy of the Pan American policy prior to canceling the Golden Rule coverage. A bad faith claim may be decided by the jury, if there is evidence that the insurer failed to adequately investigate the insured's claim. *See*, Bannister v. State Farm Mut. Auto. Ins. Co., 692 F.3d 1117, 1128 (10th Cir. 2012). The insured must "make a showing that material facts were overlooked or that a more thorough investigation would have produced relevant information that would have delegitimized the insurer's dispute of the claim." *Id.* (quotation omitted). "That is, evidence of inadequate investigation must suggest a sham defense or an intentional disregard of uncontrovertible facts in order to be put to a jury." *Id.* (quotation omitted).

The court concludes that plaintiff has proffered sufficient evidence to raise a genuine issue of material fact as to whether defendant constructed a sham defense with respect to the payment of plaintiff's medical claims. As discussed, defendant's policy, construed in plaintiff's favor, allowed for coordination of benefits with other group insurance or group-type coverage. Defendant's characterization of Pan American coverage as individual coverage or group coverage depended, at least in part, on what the relevant documents, including the certificate of insurance, actually said. Defendant, in adjudicating coverage, was making a decision highly consequential to plaintiff. However, in making its decision, defendant did so without ever looking at what the documents said. Plaintiff also has presented evidence sufficient to support a finding by a reasonable jury that the Pan American policy was

indeed group insurance.  Further, the evidence in the record, viewed in a light most favorable to plaintiff, indicates that an investigation into the contents of what the documents said would have changed defendant's decision to cancel the Golden Rule coverage.  Therefore, the court concludes that summary judgment is not appropriate on the bad faith claim and the claim may proceed to trial.

Conclusion

Based upon the foregoing, Plaintiff's Amended Motion for Partial Summary Judgment (doc. no. 59) is **DENIED**.  Defendant's Sealed Objections to Plaintiff's Summary Judgment Evidence (doc. no. 85) and Defendant's Cross-Motion for Summary Judgment (doc. no. 65) are also **DENIED**.

IT IS SO ORDERED this 8th day of February, 2018.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

15-1230p029.docx